1  DONNA S. TAMANAHA, Assistant U.S. Trustee (WI#1013199)
   JULIE M. GLOSSON, Trial Attorney (#230709)
2  U.S. Department of Justice
   Office of the United States Trustee
3  235 Pine Street, Suite 700
   San Francisco, CA  94104
4  Telephone: (415) 705-3333
   Facsimile:   (415) 705-3379
5  Email: julie.m.glosson@usdoj.gov

6  Attorneys for Acting United States Trustee
    AUGUST B. LANDIS

**UNITED STATES BANKRUPTCY COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re | Case No. 10-34515 DM 7 |
| RICARDO UDARBE TOLENTINO and<br>JOSEPHINE LACTAO TOLENTINO, | Chapter 7 |
| | Date:   June 3, 2011<br>Time:  10:00 a.m.<br>Place: Hon. Dennis Montali |
| Debtors. | 235 Pine Street, Courtroom 22<br>San Francisco, California |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
UNITED STATES TRUSTEE'S MOTION TO DISMISS CASE
FOR ABUSE UNDER 11 U.S.C. §§ 707(b)(1) AND (b)(3)**

August B. Landis, the Acting United States Trustee for the Northern District of California - Region 17 ("U.S. Trustee") submits this memorandum in support of the Motion to Dismiss Case for Abuse under 11 U.S.C. §§ 707(b)(1) and (b)(3).

MPA - UST's Motion to Dismiss Case - 10-34515                                                                                                           - 1 -

Case: 10-34515   Doc# 30   Filed: 05/06/11   Entered: 05/06/11 15:45:22   Page 1 of 8

## I. INTRODUCTION

Dismissal of this case is appropriate because the debtors, Mr. and Mrs. Tolentino, have the ability to pay more than $1,000 per month towards their creditors. This is calculated in part by eliminating tuition and support payments for their adult children, suspending retirement contributions, eliminating retirement loan repayments, and adjustments for actual expenses. These adjustments are reflected in **Exhibit 1** to the Declaration of Ankey To.

Mr. Tolentino is gainfully employed as a clinical lab scientist at Kaiser where he has worked for the past 10 years. He currently earns more than $120,000 per year. Mrs. Tolentino is not employed but is studying to become a registered nurse. See Glosson Declaration. There are no known reasons, such as medical or physical, that prevent her from working. The debtors have three daughters, only one of which is under age 18. See Amended Schedule I. The other two daughters are both in college and the debtors pay the expenses related to their board and tuition. Id. In addition, the debtors have not paid their mortgage payment on either their residence or their rental in more than one year. See Glosson Declaration. Although they successfully obtained a modification of the mortgage on their rental property, they have not made a payment and continue to collect rent of $1,200 per month, though not consistently. Id.

These facts, along with those set forth in the motion, evidence an abuse of chapter 7 based upon the totality of the circumstances of their financial condition. Based upon the adjustments proposed by the U.S. Trustee, the debtors have $1,099 per month available to pay their creditors. See **Exhibit 1** to To Declaration.

The U.S. Trustee has standing to file this motion to dismiss under both section 707(b)(1) and section 307. This motion is timely made having been filed before the expiration of the May 6, 2011 deadline[1].

---

[1] The parties stipulated to two extensions of the deadline. The first was to provide time for examination of the debtors and the second was to allow for time to produce documents following the examination and amendments to Schedules I and J.

MPA - UST's Motion to Dismiss Case - 10-34515 - 2 -

Case: 10-34515    Doc# 30    Filed: 05/06/11    Entered: 05/06/11 15:45:22    Page 2 of 8

## II. ARGUMENT

### A. Statutory Framework

Prior to the enactment of BAPCPA, a Court could dismiss a case under section 707(b) if it found that a debtor's case was a "substantial abuse" of the provisions of Chapter 7. Section 707(b)(1) now provides for dismissal of a case with primarily consumer debt for mere "abuse." A Chapter 7 case may be dismissed for abuse under section 707(b)(1) pursuant to either section 707(b)(2) or 707(b)(3). The presumption in favor of relief for the debtor found in the previous version of the statute no longer exists. In re Egebjerg, 574 F.3d 1045, 1048 (9th Cir. 2009).

Section 707(b)(2) provides objective standards – the Means Test – for courts to determine whether abuse exists. If a case is presumed abusive, it can be dismissed without the need for further evidence unless the debtor can show "special circumstances" to rebut the presumption. Alternatively, a case may be dismissed under section 707(b)(3)(A) if it was filed in bad faith or under section 707(b)(3)(B) if the totality of the circumstances of the debtor's financial situation demonstrates abuse. 11 U.S.C. § 707(b)(3)(A), (B); See In re Egebjerg, 574 F.3d at 1048; In re Pak, 343 B.R. 239, 241 (Bankr. N.D. Cal. 2006); In re Mitchell, 357 B.R. 142, 150 (Bankr. C.D. Cal. 2006). The "abuse" standard of section 707(b)(3) expressly applies when the presumption of abuse under the Means Test of section 707(b)(2) does not arise, so that "passing" the Means Test does not preclude a discretionary finding of abuse by the court based on bad faith or the totality of the circumstances. In re Egebjerg, 574 F.3d at 1048; In re Lamug, 403 B.R. 47, 53 (Bankr. N.D. Cal. 2009).

Dismissal under section 707(b) is appropriate only if the debtor has primarily consumer debt, which is defined as "debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8). The Ninth Circuit has determined that a debtor has primarily consumer debt when more than half of the dollar amount owed is consumer debt. See Zolg v. Kelly (In re Kelly), 841 F.2d 908, 913 (9th Cir. 1988).

The Debtors identified that they have primarily consumer debt on the voluntary petition, and on the Means Test. The Debtors reported total liabilities of $1,523,337.75 which consists of $1,402,325 of debt secured by their real properties, $6,000 priority tax debt, and $115,012 unsecured consumer credit card debt and unpaid tuition expenses. More than one half of the Debtors' total liabilities is the secured

debt on their current and former residences and is "consumer debt." In re Price, 353 F.3d 1135, 1139 (9th Cir. 2004). Moreover, there is nothing to suggest that the Debtors' credit card purchases were for anything other than a personal, household, or family purpose. In sum, because more than half of the dollar amount owed is consumer debt, the Debtors have primarily consumer debt.

### B. The Totality of the Circumstances of the Debtors' Financial Condition Demonstrates Abuse.

Independent of the determination of whether the presumption of abuse arises under Section 707(b)(2), a case may also be dismissed under Section 707(b)(3)(B) where the totality of the circumstances of the debtor's financial situation demonstrates an abuse of chapter 7. 11 U.S.C. § 707(b)(3)(B). See also In re Pak, 343 B.R. 239, 241 (Bankr. N.D. Cal. 2006) (chapter 7 case can be dismissed for "abuse" under § 707(b)(3) even if abuse is not presumed as a result of the Means Test); see also In re Paret, 347 B.R. 12, 15 (Bankr. D. Del. 2006) (the "shall" directive in § 707(b)(3) "explicitly mandates" consideration of the totality of the circumstances to determine whether abuse exists if the § 707(b)(2) presumption does not arise or is rebutted).

The standard by which abuse is measured under Section 707(b)(3)(B) is the totality of the circumstances of a debtor's financial condition. The inquiry into the circumstances of a debtor's financial condition is a factual one that requires the court to consider the totality of a debtor's financial condition. In re Lamug, 403 B.R. 47 (Bankr. N.D. Cal. 2009); In re Baeza, 398 B.R. 692 (Bankr. E.D. Cal. 2008). Prior to the enactment of BAPCPA, the ability to pay was measured by a debtor's ability to pay his or her creditors under a hypothetical chapter 13 plan. See In re Kelly, 841 F.2d 908 (9th Cir. 1988) and In re Price, 353 F.3d 1135 (9th Cir. 2004). However, there is no textual support for reading section 707(b)(3)(B) as hinging a finding of abuse on whether the debtor can fund a chapter 13 plan. In re Baeza, 398 B.R. 692 (Bankr. E.D. Cal. 2008). To the contrary, the default remedy for abuse under section 707(b)(3)(B) is dismissal, not conversion. See 11 U.S.C. § 707(b)(1).

In Lamug, Judge Efremsky dismissed a chapter 7 case where the debtors had the ability to pay their creditors under the totality of the circumstances holding that the phrase "totality of the circumstances" continued to have the same meaning post-BAPCPA and that "the ability to pay, standing by itself, remains a sufficient ground to support a finding of abuse under post-BAPCPA § 707(b)(3)(B)." In re Lamug, 403 B.R. at 55. The courts in Lamug and Baeza both considered the pre-BAPCPA factors

set forth in In re Price, 353 F.3d. 1135 (9th Cir. 2004), which require a case-by-case analysis of the debtor's actual financial situation or condition. In re Lamug, 403 B.R. at 54-55; In re Baeza, 398 B.R. at 696 and 697-8.

In this case, the discretionary expenses totaling more than $5,000 resulting in disposable income of more than $1,099 per month evidence an ability to pay their creditors. These expenses are discussed below.

### 1. The Debtors are Improperly Preferring Their Children Over their Unsecured Creditors By Making Voluntary Payments for Tuition and Other Support Expenses.

Though laudable, many courts have rejected support payments to able-bodied adult children where the payments are discretionary and made at the expense of unsecured creditors. In re Harrelson, 323 B.R. 176, 179 (W.D. Va. 2005) (where the district court held that granting relief would be a substantial abuse, in part, because debtors had no duty to pay the college expenses of their adult children); In re Walker, 383 B.R. 830, 838 (Bankr. N.D. Ga. 2008) (dismissal was warranted under totality of the circumstances where debtors contributed $1,800/mo towards the college expenses of their adult children); In re Allen, 411 B.R. 913 (Bankr. S.D. Ga. 2009) (court concluded debtor had the ability to pay her creditors by eliminating $225/mo support payments to her adult daughter); In re Hess, 2007 WL 3028422 * 3 (Bankr. N.D. Ohio 2007) (court did not permit $300/mo payment to debtor's adult son at the expense of unsecured creditors); In re Haar, 373 B.R. 493 (Bankr. N.D. Ohio 2007) (dismissal warranted under the totality of the circumstances where debtors paid for four cars and five cells phones, some of which were used by their adult children while full-time students); In re Staub, 256 B.R. 567, 571 (Bankr. M.D.Pa. 2000) (the court in this pre-BAPCPA case held that the $900/mo educational expenses for debtor's adult children were discretionary and "should not be foisted upon a debtor's pre-petition creditors.").

It is undisputed that two of their three children are able-bodied adults - 22 and 18 years of age. Both are in college, one at UC Irvine and another at University of Santa Clara. See Amended Schedules I and J. The Debtors are under no legal obligation to support their two adult children and any expenses related to their support or their college expenses evidence discretionary income that should be included in the calculation of disposable income available to pay creditors.

In addition to the tuition and support payments for their adult children, the debtors claimed expenses for private school tuition for their youngest daughter and nursing school tuition payments for Mrs. Tolentino. See Amended Schedule J. The private school tuition payments are eliminated from the debtors' budget because the debtors are not actually incurring this expense. See Glosson Declaration.

Mrs. Tolentino was previously gainfully employed. She owned and operated a residential care facility but when that facility closed, she decided to become a registered nurse. See Glosson Declaration. Rather than pay their creditors, the debtors have elected to improve their future financial situation by obtaining an advanced degree. Under other circumstances, such an expense would be encouraged, however, while the debtors are attempting to discharge their debts, this expense demonstrates that the debtors have the ability to pay their creditors.

### 2. Retirement Loan Repayment and Contributions Totaling Nearly $1,200/mo Evidence An Ability to Pay.

Mr. Tolentino currently pays $594 per month towards the repayment of a retirement loan. The debtors borrowed approximately $32,000 to pay for tuition expenses. See Glosson Declaration. The U.S. Trustee submits that the expense for the loan repayment is not deductible because it is not a debt. In re Egebjerg, 574 F.3d 1045 (9th Cir. 2009) (the Ninth Circuit joins the vast majority of courts holding that a debtor's obligation to repay a loan from a retirement account is not a "debt" under the Bankruptcy Code). Rather, Mr. Tolentino is using this nearly $600 per month to replenish his retirement savings at the expense of his unsecured creditors. The ability to pay himself nearly $600 per month evidences discretionary funds that should be made available to pay creditors.

The retirement contribution of $600 per month suggests that the Debtors believe they have substantial discretionary funds available to set aside for the future. The Ninth Circuit in In re Craig, 579 F.3d 1040 (9th Cir. 2009) held that the bankruptcy courts in considering whether such deductions are allowable must consider the factors set forth in Hebbring v U.S. Trustee, 463 F.3d 902 (9th Cir. 2006), specifically including but not limited to: the debtor's age, income, overall budget, expected date of retirement, existing retirement savings, and amount of contributions; the likelihood that stopping contributions will jeopardize the debtor's fresh start by forcing the debtor to make up lost contributions after emerging from bankruptcy; and the needs of the debtor's dependents. At a minimum, the contribution evidences discretionary income and the U.S. Trustee reserves the right to offer further

evidence of whether such contributions should be included in disposable income.

    **3.    Debtors Have Not Paid Their Mortgage In More Than One Year and Thus, their Projected Actual Mortgage Expense is Calculated Using $3,000, the Modified Mortgage Payment on the Rental.**

The debtors testified at their meeting of creditors and at the Rule 2004 examination by the U.S. Trustee that they have not paid their mortgage payment on their residence, scheduled at $3,559, in more than one year. See Glosson Declaration. Just prior to filing, the debtors obtained a modification of the loan on their rental to approximately $3,000 per month. Id. Although the debtors have not paid this amount, they intend to move into this property if they are unable to obtain a modification on their residence. Id. The amount reported on amended Schedule J does not reflect their actual budget and overstates their mortgage obligation by at least $500 per month. The $1,200 per month the debtors collect in rental income is not reflected in the calculation of disposable income. See **Exhibit 1** to To Declaration.

    **4.    Based Upon Documents Produced to the U.S. Trustee, Other Expenses Are Adjusted to their Actual Expenses.**

The debtors produced documents to support certain expenses. Based upon the U.S. Trustee's review of those documents, and as set forth in Exhibit 1 to Ms. To's declaration, adjustments were made to the following expenses:

- Electricity & heating fuel – Debtors claimed $150 and increased it to $373 on amended Schedule J. Based upon documents provided to the U.S. Trustee, this amount was adjusted to $200/mo.

- Water – Debtors claimed $38 on both the original and amended Schedule J, however, based upon documents, this amount was adjusted to $20/mo.

- Clothing – Debtors claimed $100 on Schedule J and doubled it to $200 on Amended Schedule J. The U.S. Trustee adjusted this to $100.

- Life insurance – Debtors did not claim an expense for life insurance on Schedule J but claimed $295 on Amended Schedule J. The U.S. Trustee adjusted this to $253 based upon documents.

- Auto insurance – Debtors initially claimed nothing for auto insurance but increased it to $250 on Amended Schedule J. The U.S. Trustee adjusted this expense to $150 based upon documents produced.

- Other: gasoline – Debtors claimed $280 for transportation expense and no additional amounts for gasoline on their Schedule J, but amended Schedule J to add $800 for gasoline expense above the $280 for transportation. This amount was reduced to $275 based upon actual receipts.

MPA - UST's Motion to Dismiss Case - 10-34515      - 7 -

Case: 10-34515   Doc# 30   Filed: 05/06/11   Entered: 05/06/11 15:45:22   Page 7 of 8

Due to privacy concerns, the documents produced are not included in the record but would be made available should an evidentiary hearing be necessary.

**III. <u>CONCLUSION</u>**

This case is an abuse of chapter 7 based upon the totality of the circumstances. Mr. Tolentino is gainfully employed earning more than $120,000 per year. Mrs. Tolentino is capable of gainful employment and nothing prevents her from returning to the workforce. By eliminating the discretionary and unsubstantiated expenses, the debtors have $1,099 available to pay creditors.

WHEREFORE, the U.S. Trustee respectfully requests the court order the case dismissed.

Dated: May 6, 2011
August B. Landis,
Acting United States Trustee

By: /s/ Julie M. Glosson
Attorney for the U.S. Trustee